IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| MICHAEL EBENROTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 119-001 |
| ) | |
| ANDREW SAUL, Commissioner ) | |
| of Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.   BACKGROUND**

Plaintiff applied for DIB and SSI in July 2015, alleging a disability onset date of May 1, 2014. Tr. ("R."), pp. 19, 219-26, 259-69. The alleged onset date was later amended to January 1, 2014. R. 39. Plaintiff last met the insured status requirements of the Social Security Act for

---

[1]Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Andrew Saul, Commissioner of Social Security Administration, as the proper Defendant.

DIB on March 31, 2014, but the application did not identify Plaintiff's case as a closed period case. R. 21, 259.

Plaintiff was thirty-nine years old on his amended, alleged disability onset date, and forty-three years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 30, 259. Plaintiff alleged disability based on the following conditions: multiple injuries from a car accident, multiple hip replacements, multiple surgeries to correct complications from the hip replacements, difficulty walking and sitting over five minutes, severe pain in his right leg/hip and feet, obesity, an inability to walk stairs, uneven length of his legs, a limp, high blood pressure, severe depression, and having to lie down at an angle. R. 21, 263. Plaintiff completed tenth grade, and prior to his alleged disability date had accrued a work history that included jobs as a handyman and produce stocker. R. 21, 73, 263.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 19, 110-14, 120-24. Plaintiff requested a hearing before an ALJ, (R. 125-27), and the ALJ held a hearing on January 9, 2018. R. 37-79. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Doug Prutting, a Vocational Expert ("VE"). Id. On February 16, 2018, the ALJ issued an unfavorable decision. R. 16-36.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 1, 2014, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.).[2]

2. The claimant has the following severe impairments: degenerative joint disease of the bilateral hips; status post-right hip replacements and surgeries; hypertension; and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

---

[2]As noted above, the alleged onset date was amended to January 1, 2014. R. 39.

2

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[3]

4. The claimant has the Residual Functional Capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) such that he can lift up to 10 pounds occasionally, stand and walk with normal breaks for 2 hours in an 8-hour work day, and sit with normal breaks for about 8 hours in an 8-hour work day.[4] The claimant can never climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs. He can occasionally push/pull with the bilateral lower extremities, and can occasionally operate foot controls with the right lower extremity. The claimant can have no exposure to extreme heat, humidity, excessive vibration, unprotected heights, or hazardous machinery. Secondary to pain and other side effects of his impairments, the claimant is limited to performing simple, routine tasks. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including hand painter, document specialist, and telephone quotation clerk (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2014, through the date of the ALJ's decision, February 16, 2018 (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 21-30.

---

[3]The ALJ considered musculoskeletal Listings, as well as mental Listings, specifically: Listing 1.02 (major dysfunction of a joint(s)), Listing 1.03 (reconstructive surgery of a major weight-bearing joint), Listing 12.04 (affective disorders) and 12.06 (anxiety related disorders). R. 23.

[4]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff raises ten enumerations of error, all of which flow from three main categories of alleged error caused by the ALJ's failure to properly: (1) weigh all the opinions of a treating physician; (2) address Plaintiff's use of a cane to ambulate; and (3) consider Plaintiff for a closed period of disability. See doc. no. 14 ("Pl.'s Br."); doc. no. 16 ("Reply Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 15 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Addressing ten enumerations of error would unnecessarily obfuscate the two main reasons this case should be remanded:  (1) the ALJ did not properly evaluate the opinion of Paul Fischer, M.D, a treating physician with a well-documented, years-long treatment relationship with Plaintiff, and (2) the ALJ failed to make conclusive findings about Plaintiff's need, (or not), to use a hand-held assistive device.  Accordingly, the Court limits its discussion to these two topics, which permeate multiple enumerations of alleged error, with the caveat that should the District Judge accept this recommendation, on remand, Plaintiff's disability claims must be

5

evaluated in accordance with the five-step sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

> **A.      Assigning Weight to Medical Opinions**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (*per curiam*) ("The ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'").

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities). Generally, however,

> the longer a treating source has treated [a claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen [the

claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2)(i).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5), 416.927(c)(1)-(2), (5). Under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d), 416.927(d).

### B. Analyzing Need for a Cane

To find that a hand-held assistive device, such as a cane, is medically required,

> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the

7

> circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). With respect to sedentary work, since most such unskilled work "requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds," the unskilled sedentary occupational base may not be significantly eroded because a claimant who uses a medically required hand-held device might still be able to perform the minimum requirements for sedentary work with the other hand. Id. "On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities . . . may be significantly eroded." Id.

The Court is mindful, however, SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 191-92 (10th Cir. 2009) (quoting SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication that the plaintiff requires an assistive device . . . . Since the plaintiff has not provided any [medical documentation establishing the need for a hand-held assistive device and describing circumstances in which device is needed], she has failed to show that the use of a cane is medically required.").

Moreover, if the record contains information showing a claimant uses a cane, an ALJ should explicitly consider whether the claimant has a medical necessity for using such a

8

hand-held device.  Carter v. Astrue, No. 3:10-cv-22-J-TEM, 2011 WL 4502024, at *9-10 (M.D. Fla. Sept. 28, 2011).  For, as explained above, the need for a cane may significantly erode the occupational base for a claimant and such a need would need to be included in the hypothetical questions presented by the ALJ to a VE.  Dolan v. Comm'r of Soc. Sec., Case No. 6:16-cv-0214341GJK, 2018 WL 1531917, at *2 (M.D. Fla. Mar. 29, 2018) (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).  If the ALJ does not affirmatively reject the need for a cane, "the Court cannot be sure whether he intended to recognize it . . . . Even if an ALJ meant to reject the medical necessity of [a claimant's] cane, he err[s] by failing to explain his reasons for doing so."  Carter, 2011 WL 4502024, at *10.

### C. Improper Treatment of Dr. Fischer's Opinions

As set forth above, a treating physician's opinion must be given substantial weight, and the refusal to do so requires a showing of good cause by the Commissioner.  See Crawford, 363 F.3d at 1159; Schnorr, 816 F.2d at 581; Hillsman, 804 F.2d at 1181.  The Commissioner does not contest Dr. Fischer's status as Plaintiff's treating physician, (Comm'r's Br., pp. 15-18), and hearing testimony and the treatment notes in the record confirm a consistent treatment relationship spanning at least four years.  R. 41; see also, e.g., R. 655-86, 1065-74, 1080-1111.  The ALJ, too, acknowledged Dr. Fischer's status as a treating physician and that he had provided several opinions limiting Plaintiff's functional abilities.  R. 27-28.

In particular, the ALJ noted Dr. Fischer opined in February 2016 and September 2017 that Plaintiff could not walk because of right hip pain, and pain and other symptoms would frequently interfere with attention and concentration needed to perform even simple tasks. R. 27 (citing Ex. B8F (R. 1112-16) & Ex. B12F (R. 1212-18)).  The ALJ further cited the

following additional opinions offered by Dr. Fischer in the Physical Residual Functional Capacity Questionnaire, (Ex. B8F), and Treating Source Statement, (Ex. B12F): Plaintiff is capable of high stress work, could not walk a city block without rest or severe pain, could sit for fifteen minutes at a time, could stand for ten minutes at a time, could sit for about two hours in an eight-hour day with normal breaks, could stand/walk for less than two hour total in an eight-hour day, would need a job that allowed shifting positions at will, would need to take unscheduled breaks for ten minutes once per hour, and would need a cane when engaged in occasional standing/walking. R. 27. However, the ALJ gave Dr. Fischer's opinions "little weight because they are inconsistent with the overall objective medical record, including Dr. Fischer's own treatment that generally reflect[s] lesser limitations." R. 27.

In support of his decision to discount Dr. Fischer's opinions, the ALJ cited select portions from only two years of Dr. Fischer's treatment records, 2016 and 2017, even though there were records dating back until at least 2013, (R. 655-86), which includes treatment notes from May 21, 2014, documenting hip pain and referral for probable surgical intervention for the same, (R. 670). On November 11, 2014, Dr. Fischer noted Plaintiff's hip replacement had to be repeated with a plate because the stem broke through the femur, and Plaintiff was on crutches. R. 672. By April 27, 2015, Dr. Fischer was documenting Plaintiff's reports of noise, instability, and pain postdating Plaintiff's third, right hip replacement after a failed implant. R. 680. The Court is not persuaded by the Commissioner's contention the ALJ fully considered Plaintiff's condition in 2014 and 2015, (Comm'r's Br., p. 19), by referencing a 2014 hypertension diagnosis, (R. 25), and consideration of mental impairments in 2015, (R. 26). The Court offers no opinion on the meaning of Dr. Fischer's records from 2014 and 2015 concerning Plaintiff's hip, but notes

only that it is unable to tell whether they were considered by the ALJ in reaching his conclusions about the weight accorded to Dr. Fischer's opinions.

The ALJ noted Dr. Fischer reported in September 2016, several months after right hip surgery, that Plaintiff had good rotation of his hip with no detectable instability.  R. 27 (citing Ex. B9F).  The ALJ did not mention other Dr. Fischer records from the same time period stating Plaintiff was using crutches and had considerable pain after his hip replacement surgery.  R. 1144, 1152.  Nor did the ALJ mention Plaintiff had been unable to start physical therapy as of October 6, 2016, because of instability in the hip joint, and he had pain with range of motion of the hip.  R. 1168.

The ALJ cited Dr. Fischer's January 9, 2017 treatment notes that Plaintiff "had a good range of motion of the right hip with negative straight leg raise testing" and reported "walking better after an accident that injured his right foot."  R. 27.  However, the note fully states Plaintiff appears with chronic pain due to repeatedly repaired hip disease, is walking better, has traumatic arthritis in the right foot from an accident, and has "reasonably" good range of motion.  R. 1179.  Missing from the ALJ's opinion is that on April 5, 2017, Plaintiff still had chronic pain requiring Vicodin.  R. 1181.  On April 25, 2017, Plaintiff reported his right hip is popping the shaft when he walks, and although Plaintiff had not followed up with his hospital surgeon, Dr. Fischer anticipated an orthopedic referral as soon as Plaintiff was able to get insurance.  R. 1184.  At that same April 25th visit, Plaintiff had pain with flexion and rotation of the hip.  R. 1184.

In a separate portion of the administrative opinion discussing Dr. Fischer's treatment in the context of discounting Plaintiff's complaints of pain, the ALJ did quote the "popping in the shaft" language but faulted Plaintiff for not following up with the hip surgeon, despite

11

the notation by Dr. Fischer concerning Plaintiff's lack of insurance. R. 25. Of course, it is well-settled that poverty may excuse failure to comply with treatment. See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (*per curiam*). "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to afford medical care before denying" benefits based on non-compliance with such care. Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012) (*per curiam*).

In discounting Dr. Fischer's opinions, the ALJ also pointed to a June 2017 treatment note that Plaintiff had reported painting up to twelve hours per day. R. 27. The entirety of that note memorialized Plaintiff had "right hip and foot pain following two total hip replacements. He is using Vicodin, q.i.d. for pain. *He has been more active than I would suggest* with painting up to 12 hours per day. He has tenderness with ROM of the hip." R. 1187 (emphasis added). When the ALJ discussed this note in the portion of the administrative opinion discounting Plaintiff's complaints of pain, the ALJ characterized Dr. Fischer's consideration of Plaintiff's painting as "a bit overactive." R. 25. Nor did the ALJ recognize a July 31, 2017 treatment note recording Plaintiff had a failed right hip replacement and would be getting a fourth surgical procedure in about one month. R. 1191. Plaintiff was taking about five Vicodin per day and had pain with hip range of motion. R. 1191. Dr. Fischer completed his Treatment Source Statement memorializing his opinions on Plaintiff's limitations discounted by the ALJ on September 13, 2017. R. 1213.

No doubt, an ALJ need not refer to every piece of record evidence, so long as the reviewing court can "conclude that the ALJ considered the claimant's medical condition as a whole." Adams v. Comm'r of Soc. Sec., 586 F. App'x 531, 533 (11th Cir 2014) (*per curiam*) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, in discounting a treating physician's opinion, an "ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Theus v. Astrue, No. CV 207-151, 2009 WL 723205, *4 (S.D. Ga. Mar. 18, 2009). As the Eleventh Circuit has explained, in discounting a treating source's opinion, an ALJ may not ignore the entirety of a physician's treatment notes in favor of a focus on only those that support the ALJ's decision to discount a treating physician's opinion. Davis v. Astrue, 287 F. App'x 748, 755 (11th Cir. 2008) (*per curiam*); see also Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1262-63 (11th Cir. 2019) (*per curiam*) (recognizing that in discounting treating physician opinions, even ones offered in a questionnaire format, it is "not enough to merely point to positive or neutral observations" that may create a tension with an offered opinion but may actually only show a claimant's impairments are not all-encompassing).

Here, the ALJ had multiple years of treatment records from Dr. Fischer, chose to focus on a limited window of time, and even then, focused only on the notes supporting his position of an inconsistency between Dr. Fischer's opinions and positive treatment notes. "It is not enough to discover a piece of evidence which supports [the administrative] decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986); see also Martin v. Heckler, 748 F.2d 1027, 1033 (5th Cir. 1984) (rejecting misuse of one set of

13

positive test results, to the exclusion of all other evidence of record, to find claimant not disabled when the ignored evidence suggested other severe impairments).

As there is no doubt Plaintiff had multiple failed hip replacements underlying his well-documented, years-long treatment relationship with Dr. Fischer, the Court cannot now conclude the ALJ's decision to give the doctor's opinions little weight is supported by substantial evidence. This is particularly true given the wealth of treatment notes that, at a minimum, show the ALJ painted an incomplete picture of Dr. Fischer's treatment notes and otherwise failed to demonstrate an inconsistency "with the overall objective medical record." Absent the appropriate showing of good cause to give Dr. Fischer's opinion little weight, the case should be remanded. See Crawford, 363 F.3d at 1159; Schnorr, 816 F.2d at 581; Hillsman, 804 F.2d at 1181.

### D. Plaintiff's Use of a Cane

Several of Plaintiff's alleged errors are based on his contention the ALJ failed to include use of a cane in the RFC and hypothetical presented to the VE. As explained above, SSR 96-9p requires medical documentation establishing the need for a hand-held assistive device, but an ALJ must always consider the particular facts of a case. Moreover, the occupational base for an individual who must use a hand-held device for balance because of may be significantly eroded. Dolan, 2018 WL 1531917, at *2. Thus, where, as in this case, the record contains information showing a claimant uses a cane, an ALJ should explicitly consider whether the claimant has a medical necessity for using such a device and affirmatively reject the cane, if appropriate, so the reviewing Court can be sure whether he intended to recognize use of a cane. See Carter, 2011 WL 4502024, at *10. Such

affirmative consideration also ensures the ALJ has included all well-supported limitations in the hypotheticals presented to the VE.  See Wilson, 284 F.3d at 1227.

Here, the record contains multiple notations of Plaintiff's use of a cane, and at times a prescribed walker or crutches.  See, e.g., R. 43, 51-52, 285, 1114, 1144, 1152, 1867.  The ALJ never makes an affirmative finding regarding Plaintiff's need to use a cane or other hand-held device, stating only that Plaintiff can "ambulate effectively," (R. 23, 26), and acknowledging Plaintiff's testimony he uses a non-prescription cane and a walker prescribed when he was recovering from surgery.  R. 24.  The ALJ also acknowledged Dr. Fischer's opinion Plaintiff would need a cane for occasional standing/walking, (R. 27), but as discussed above, the ALJ discounted Dr. Fischer's opinions without sufficient cause.

The Commissioner argues that even if Plaintiff needs a cane to walk longer distances, he would be not be prevented from performing the identified jobs.  Comm'r's Br., p. 11.  The Commissioner further suggests "to the extent the ALJ should have included a specific reference to a cane, such oversight was harmless error."  Id. at 12.  According to the Commissioner, even though the burden is his at step five of the sequential evaluation process to establish there are jobs in the national economy Plaintiff can perform, Plaintiff did not carry his burden to show he could not perform the jobs identified by the VE.  Id.

Although Plaintiff maintains he needs a cane and such use of a cane should have been included in the hypothetical to the VE, he also argues error by the ALJ in failing to articulate a reason to reject his use of cane.  Pl.'s Br., pp. 16-21.  Specific to the jobs identified by the VE based on a hypothetical that did not include use of a cane, Plaintiff argues, "Most sedentary jobs require good use of the hand and fingers."  Reply Br., p. 4 (citing  SSR 83-14, 1983 WL 31254, at *2 (Jan. 1, 1983)).  Plaintiff further argues the three jobs identified by the

VE and relied upon by the ALJ require working use of the hands and have elements of standing and walking, concluding his "need to use a cane with one hand interferes with the unfettered use of [his] hands in the performance of work activity and maintain quotas and production mandates." Id. at 4.

Without out ever making an affirmative rejection of Plaintiff's need to use a cane, the ALJ's RFC nevertheless included restrictions on climbing, balancing, stooping, kneeling, crouching and crawling. R. 24. The administrative opinion makes clear the ALJ was aware of the potential need to use a cane, but it does not make clear an affirmative rejection of the need to use a cane. See Carter, 2011 WL 4502024, at *10. The case law upon which the Commissioner relies to argue for a harmless error analysis is inapposite. For example, in Jones v. Comm'r of Soc. Sec., 492 F. App'x 70, 73 (11th Cir. 2012) (*per curiam*), the Eleventh Circuit determined remand was not necessary where a claimant had a driving limitation that was not included in the hypothetical to the VE because the functional requirements of the jobs identified did not appear to include driving.

On this record, however, the Court is unable to conclude a hand painter, document specialist, and telephone quotation clerk would never be required to perform work that could be impacted by needing to use a cane in one hand. It may be that there is sufficient reason to affirmatively reject the need for Plaintiff to use a cane or that the use of cane would preclude Plaintiff from performing all sedentary work. However, the Court is unable to conclude the ALJ affirmatively rejected Plaintiff's stated need for a cane in all instances, let alone discern the ALJ's reasoning for making any such affirmative rejection. Thus, remand is also appropriate for proper consideration of Plaintiff's need, (or not), to use a cane.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications. However, for the reasons set forth above, the Court cannot affirm the administrative decision as supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.")

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 14th day of January, 2020, at Augusta, Georgia.

							_____
							BRIAN K. EPPS
							UNITED STATES MAGISTRATE JUDGE
							SOUTHERN DISTRICT OF GEORGIA